**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FERRING PHARMACEUTICALS INC.,<br>FERRING B.V., and<br>FERRING INTERNATIONAL CENTER S.A.,<br><br><br>Plaintiffs,<br><br>v.<br><br>SERENITY PHARMACEUTICALS, LLC,<br>REPRISE BIOPHARMACEUTICS, LLC, and<br>ALLERGAN, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. No. 1:17-cv-00479-GMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**FERRING'S ANSWERING BRIEF IN OPPOSITION TO**
**DEFENDANTS SERENITY AND REPRISE'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO TRANSFER**

Of Counsel:

Keats A. Quinalty
John W. Cox
Joshua A. Davis
Womble Carlyle Sandridge & Rice, LLP
271 17th Street NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 872-7000
KQuinalty@wcsr.com
JWCox@wcsr.com
JoDavis@wcsr.com

Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel Attaway (#5130)
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4383
MBourke@wcsr.com
DSeverance@wcsr.com
DAttaway@wcsr.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.   SUMMARY OF THE ARGUMENT ............................................................................ 2

III.  STATEMENT OF THE FACTS .................................................................................. 3

    A.   The Parties ...................................................................................................... 3

    B.   The Nature of the Action ................................................................................. 4

    C.   The SDNY Action ........................................................................................... 5

IV.   ARGUMENT ............................................................................................................ 5

    A.   Ferring Requests Jurisdictional Discovery to Determine Ownership
        of the Patents in Suit ....................................................................................... 5

    B.   Defendants' Motion to Dismiss Is Mooted by Ferring's Filing of an
        Amended Complaint as a Matter of Right ........................................................ 7

        1.   Subject Matter Jurisdiction .................................................................. 7

        2.   Personal Jurisdiction ........................................................................... 8

        3.   Sufficiency of Ferring's Inequitable Conduct Allegation.......................... 8

    C.   Transfer to SDNY Is Improper and Unwarranted............................................. 9

        1.   Legal Standard .................................................................................... 9

        2.   The Case Could Not Have Been Brought in SDNY ................................. 10

        3.   The *Jumara* Factors Weigh Heavily Against Transfer to
            SDNY ................................................................................................. 11

            a.   The SDNY Action does not support transfer ............................... 12

            b.   Private interest factors ............................................................... 14

            c.   Public interest factors ................................................................ 18

V.    CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Roxane Labs., Inc.*,
    No. 12-457-RGA-CJB, 2013 WL 2322770 (D. Del. May 28, 2013) ............................ 18

*AIP Acquisition LLC v. iBasis, Inc.*,
    No. 12-616-GMS, 2012 WL 5199118 (D. Del. Oct. 19, 2012) .................................. 14, 20

*Airport Inv'rs Ltd. P'ship v. Neatrour*,
    No. 03-831-GMS, 2004 WL 225060 (D. Del. Feb. 3, 2004) ........................................ 7, 8

*Benitec Australia, Ltd., v. Nucleonic, Inc.*,
    495 F.3d 1340 (Fed. Cir. 2007) ........................................................................................ 8

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
    No. 16-733-GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017) ........................... 9, 18, 19

*Boston Sci. Corp. v. Johnson & Johnson Inc.*
    532 F. Supp. 2d 648 (D. Del. 2008) ............................................................................... 15

*Calloway v. Green Tree Servicing, LLC*,
    599 F. Supp. 2d 543 (D. Del. 2009) ................................................................................. 9

*Cellectis S.A. v. Precision Biosciences, Inc.*,
    858 F. Supp. 2d 376 (D. Del. 2012) ............................................................................... 15

*Danisco U.S. Inc. v. Novozymes A/S*,
    744 F.3d 1325 (Fed. Cir. 2014) ........................................................................................ 8

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ........................................................................................ 9

*Fuisz Pharma LLC v. Theranos, Inc.*,
    No. 11-1061-SLR-CJB, 2012 WL 1820642 (D. Del. May 18, 2012) .............................. 16

*Fuisz Pharma LLC v. Theranos, Inc.*,
    No. 11-1061-SLR-CJB, 2012 WL 2090622 (D. Del. June 7, 2012) ............................... 16

*Guzzetti v. Citrix Online Holdings GmbH*,
    No. 12-01152-GMS, 2013 WL 124127 (D. Del. Jan. 3, 2013) ....................................... 14

*Idenix Pharms., Inc. v. Gilead Scis., Inc.*,
    No. 13-1987-LPS, 2014 WL 4222902 (D. Del. Aug. 25, 2014) ....................................... 8

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,*
    599 F.3d 1377 (Fed. Cir. 2010)....................................................................... 8

*Intellectual Ventures I LLC v. Altera Corp.,*
    842 F. Supp. 2d 744 (D. Del. 2012)........................................................ 14, 15, 17

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995)................................................................... passim

*Nilssen v. Everbrite, Inc.,*
    No. 00-189-JJF, 2001 WL 34368396 (D. Del. Feb. 16, 2001) ......................... 17

*Robert Bosch LLC v. Alberee Prods., Inc.,*
    70 F. Supp. 3d 665 (D. Del. 2014)..................................................................... 8

*Rothschild Mobile Imaging Innovations, LLC v Mitek Systems, Inc.,*
    No. 14-617-GMS, 2015 WL 4624164 (D. Del. July 31, 2015) ......................... 17

*Shoulder Innovations, LLC v Ascension Orthopedics, Inc.,*
    No. 11-810-JEI/AMD, 2012 WL 2092379 (D. Del June, 8, 2012) ................... 8

*Shutte v. Armco Steel Corp.,*
    431 F.2d 22 (3d Cir. 1970).......................................................................... 10, 14

*Smart Audio Techs., LLC v. Apple, Inc.,*
    910 F. Supp. 2d 718 (D. Del. 2012).................................................................. 17

*TC Heartland LLC v. Kraft Food Group Brands LLC,*
    -- U.S. --, 137 S. Ct. 1514 (2017) ................................................................... 10

*Textron Innovations, Inc. v. The Toro Co.,*
    No. 05-486-GMS, 2005 WL 2620196 (D. Del. Oct. 14, 2005) ......................... 14

*VE Holding Corp. v. Johnson Gas Appliance Co.,*
    917 F.2d 1574 (Fed. Cir. 1990)................................................................... 10, 11

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................... 10

28 U.S.C. § 1404(a) ............................................................................................. 9

I.      NATURE AND STAGE OF THE PROCEEDINGS

On April 28, 2017, Plaintiffs Ferring Pharmaceuticals Inc. ("Ferring Pharma"), Ferring

B.V., and Ferring International Center S.A. ("FICSA") (collectively, "Ferring") filed their

complaint for declaratory judgment against Defendants Serenity Pharmaceuticals, LLC

("Serenity"), Reprise Biopharmaceutics, LLC ("Reprise"), and Allergan, Inc. ("Allergan")

(collectively, "Defendants") alleging invalidity, unenforceability, and non-infringement of

United States Patent Nos. 7,405,203; 7,579,321; and 7,799,761 (collectively, the "patents in

suit") ("the Complaint"). (D.I. 1.) On June 9, 2017, Serenity and Reprise moved to dismiss: (1)

the Complaint in its entirety for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1);

(2) the Complaint with respect to Reprise for lack of personal jurisdiction under FED. R. CIV. P.

12(b)(2); and (3) Count V of the Complaint for failure to state a claim with respect to the

inequitable conduct claims under FED. R. CIV. P. 12(b)(6). (D.I. 11 at 1.) In the alternative,

Serenity and Reprise moved to transfer venue to the Southern District of New York ("SDNY")

pursuant to 28 U.S.C. § 1404. (*Id.*) That same day, Allergan moved to dismiss the claims against

it or, in the alterative, to transfer to SDNY for the reasons set forth in the opening brief of

Serenity and Reprise, which Allergan incorporated by reference in support of its motion, and also

moved to dismiss because allegedly "all right, title, and interest in the patents in suit reverted to

Serenity and/or Reprise." (D.I. 14 at 1.)[1]

Ferring has filed, concurrently herewith, an amended complaint pursuant to FED. R. CIV.

P. 15(a)(1)(B) ("the Amended Complaint"). (D.I. 18.) For the reasons discussed below,

Defendants' motion to dismiss is moot, and Ferring opposes Defendants' motion to transfer.

---

[1] Because Allergan has, in part, moved to dismiss or, in the alternative, to transfer on the same grounds as Serenity and Reprise, Ferring hereinafter refers to Allergan's motion (D.I. 14) and Serenity and Reprise's motion (D.I. 11) and opening brief (D.I. 12) collectively as "Defendants' motion."

## II.     SUMMARY OF THE ARGUMENT

1.     Defendants claim four times in their brief that Reprise is the owner of the patents in suit, and they use this purported fact in support of their motion to dismiss for lack of personal jurisdiction over Reprise and their alternative motion to transfer to SDNY. (D.I. 12 at 2 n.2, 7, 7 n.3, 20; *see also* D.I. 11 at 1.) But Defendants provide no support for Reprise's claim of ownership, and it conflicts with the publicly available documents which, at the time the Complaint was filed and even to date, show that Allergan is the owner of the patents in suit. Further, in its motion, Allergan claims it should be dismissed from this action because "the 'Agreement' with Allergan pleaded in paragraphs 22 and 23 of plaintiffs' Complaint has been terminated," and "***[a]s Plaintiffs alleged***, 'upon termination of the Agreement, all right title, and interest in the Patents in Suit will revert to Serenity and/or Reprise.'" (D.I. 14 at 1 (emphasis added).) Allergan provides no support that all right, title, and interest in the patents in suit have been transferred and instead relies on Ferring's allegation, which was based solely "on information and belief."

Evidence of patent ownership rests solely with Defendants. Instead of coming forward with proof of ownership in their motion, Defendants make unsubstantiated claims of ownership and point to Ferring's allegations as proof. The assignment database at the United States Patent and Trademark Office ("PTO")—the only public record of ownership available to Ferring— currently states that Serenity is the assignee of the patents in suit, but the actual assignment document does not reflect a transfer of the patents in suit from Allergan to Serenity. Thus, at least according to the publicly available documents, Allergan remains the assignee of the patents in suit. Because Defendants' unsubstantiated claims of ownership conflict with the public record (and thus who is a proper defendant in this action), Ferring respectfully requests limited jurisdictional discovery from Defendants directed to ownership of the patents in suit, including

all assignments and licenses (exclusive and non-exclusive).

2.      In an effort to move the case forward, Ferring has filed an Amended Complaint which includes additional factual allegations that address the three independent grounds on which Defendants moved to dismiss—lack of subject matter jurisdiction, lack of personal jurisdiction over Reprise, and failure to state a claim with respect to Ferring's inequitable conduct allegations. Defendants' motion to dismiss is therefore moot.

3.      Defendants' alternative motion to transfer should also be denied because this case could not have been brought in SDNY and the various *Jumara* public and private interest factors weigh against transfer.[2] Moreover, the claims currently pending in *Ferring B.V. v. Allergan, Inc.*, No. 12-2650-RWS (S.D.N.Y.) ("the SDNY action") bear no relation to the claims in this action.

## III.   STATEMENT OF THE FACTS

### A.   The Parties

Ferring Pharma is a Delaware corporation with its principal place of business in Parsippany, New Jersey; Ferring B.V. is a Dutch company; and FICSA is a Swiss company. (D.I. 18 at ¶¶ 1-3.) Together they are engaged in research, development, and commercialization activities for, *inter alia,* the drug desmopressin. (*Id.* at ¶ 4.) Ferring has developed and marketed several desmopressin products around the world, including products to treat nocturia, which is generally defined as the need to wake more than once during the night to urinate (void), following an initial period of sleep. (*Id.* at ¶¶ 74, 80.) In the United States, Ferring has obtained U.S. Food and Drug Administration ("FDA") approval for desmopressin in various dosage forms including tablets, nasal solution, injectable, and metered nasal spray. (*Id.* at ¶ 82.) Over the last

---

[2] The question of which of the three defendants is the owner of the patents in suit may ultimately affect which defendants remain in this action and, in turn, could affect the Court's transfer analysis. Ferring reserves the right to further address Defendants' motion to transfer in light of any new facts regarding ownership and its effect on which defendants remain in the action.

few decades, Ferring has worked to develop a new desmopressin product for the treatment of nocturia, and it ultimately developed a gender specific low dose orodispersible (orally disintegrating) tablet named NOCDURNA. (*Id.* at ¶¶ 83, 85.) Ferring is currently seeking approval from the FDA for NOCDURNA to treat nocturia in adults. (*Id.* at ¶ 86.)

Allergan is a Delaware corporation with its principal place of business in Irvine, California. (D.I. 18 at ¶ 9.) According to the PTO's assignment database, Allergan was the assignee of the patents in suit as of the filing of the Complaint and remains the assignee of the patents in suit as of this filing. (D.I. 18 at ¶¶ 19, 22; Severance Dec.[3] at ¶¶ 4-5, Exs. A-C.)

Serenity is a Delaware company with its principal place of business in Milford, Pennsylvania. (D.I. 18 at ¶ 5.) Serenity is in the business of, *inter alia*, developing products that address urinary conditions, and has received regulatory approval for a desmopressin nasal spray to treat nocturia in adults, which Serenity intends to market and sell in the United States under the tradename NOCTIVA. (*Id.* at ¶ 6.) The FDA's APPROVED DRUG PRODUCTS WITH THERAPEUTIC EQUIVALENCE EVALUATIONS (also known as the "Orange Book") lists, *inter alia*, the patents in suit as covering NOCTIVA. (*Id.* at ¶ 79; Severance Dec. at ¶ 6, Ex. D.)

Reprise is a New York company with its principal place of business in New City, New York. (D.I. 18 at ¶ 7.) Reprise is a holding company with five members including Dr. Seymour Fein (the purported inventor of the patents in suit) created for the sole purpose of holding Dr. Fein's intellectual property, including the patents in suit. (*Id.* at ¶ 8.) Defendants claim, without support, that Reprise is the owner of the patents in suit. (D.I. 12 at 2 n.2, 7, 7 n.3, 20.)

### B. The Nature of the Action

Ferring is seeking approval of its New Drug Application ("NDA") for NOCDURNA to

---

[3] The "Severance Dec." refers to the "Declaration of Dana K. Severance in Support of Ferring's Oppositions to Defendants' Motion to Dismiss or, in the Alternative, to Transfer," filed concurrently herewith.

treat nocturia in adults and expects approval from the FDA during the second quarter of 2018.

(D.I. 18 at ¶¶ 86, 105.) Defendants have made clear that they believe NOCDURNA is covered

by the patents in suit and have expressed an intent to enforce the patents in suit against Ferring.

(*Id.* at ¶¶ 101-102.) Thus, Ferring brought this declaratory judgment action for non-infringement,

invalidity, and unenforceability of the patents in suit to remove any barrier to market entry of

NOCDURNA.

> ### C.     The SDNY Action

The SDNY action involves Ferring and Defendants, as well as other defendants, where

the only remaining claims (which are currently asserted by Allergan entities[4]) are 35 U.S.C.

§ 256 claims to add Dr. Fein as a joint inventor on Ferring patents. The Ferring patents in the

SDNY action are not at issue here and are directed to novel pharmaceutical formulations that Dr.

Fein admitted he did not conceive. The case initially included a series of state law claims and

claims to correct the inventorship of the patents in suit here under 35 U.S.C. § 256. (D.I. 13-1,

Ex. 1; Severance Dec. at ¶ 7, Ex. E.) The SDNY court, without reaching the merits of those

claims, dismissed them based on time bars (state law claims) and equitable estoppel

(inventorship claims). (*See, e.g.*, D.I. 13-1, Exs. 5, 12, 13.) Therefore, the claims in this case

involve patents no longer at issue in the SDNY action and causes of action (here, declarations of

non-infringement and invalidity and unenforceability) never raised in the SDNY action.

## IV.   ARGUMENT

> ### A.     Ferring Requests Jurisdictional Discovery to Determine Ownership of the Patents in Suit

At the time the Complaint was filed, the publicly available information from the

assignment database at the PTO—the only public record of ownership available to Ferring—

---

[4] The surviving claims in the SDNY action suffer from a fatal lack of standing—an issue that should be addressed by the court before the anticipated trial in October 2017.

reflected that Allergan was the owner of the patents in suit. (D.I. 18 at ¶¶ 19, 22; Severance Dec. at ¶¶ 3-4, Exs. A-B.) As of this filing, the PTO assignment database currently shows that, for each of the patents in suit, on June 19, 2017, a patent assignment document was recorded noting a conveyance of an assignment from Allergan to Serenity. (Severance Dec. at ¶¶ 3, 5, Exs. A, C.) The patent assignment cover sheet indicates that the patents in suit were part of the assignment from Allergan to Serenity. (*Id.* at ¶ 5, Ex. C.) However, the "Patent Assignment" attached to the cover sheet—which was signed by Allergan on May 23, 2017, and by Serenity on June 8, 2017 (all before the filing of Defendants' motions on June 9, 2017)—does not include the patents in suit in "Exhibit A," which is a chart of the patent applications and patents transferred in the Patent Assignment. (*Id.* ¶ 5, Ex. C.) Therefore, the last publicly recorded assignment of the patents in suit is the March 18, 2010 assignment from Reprise to Allergan. (*Id.* at ¶ 4, Ex. B.)

Defendants claim, without support, that Reprise is the owner of the patents in suit. (D.I. 11 at 1; D.I. 12 at 2 n.2, 7, 7 n.3, 20.) Allergan also claims it should be dismissed because "the 'Agreement' with Allergan pleaded in paragraphs 22 and 23 of plaintiffs' Complaint has been terminated," and "as Plaintiffs alleged, 'upon termination of the Agreement, all right title, and interest in the Patents in Suit will revert to Serenity and/or Reprise.'" (D.I. 14 at 1.)

The evidence of patent ownership is solely within the possession of Defendants, and it can affect who are the proper defendants in this action. For instance Ferring cannot agree to dismiss Allergan based on its counsel's baseless assertion that the rights in the patents in suit reverted to Serenity and/or Reprise, as such assertion is contrary to the information publicly available from the PTO assignment database. Accordingly, Ferring respectfully requests limited jurisdictional discovery from Defendants directed to ownership of the patents in suit, including all assignments and licenses (exclusive and non-exclusive) to determine the proper defendants.

**B.     Defendants' Motion to Dismiss Is Mooted by Ferring's Filing of an Amended Complaint as a Matter of Right**

In response to Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction over Reprise under Rule 12(b)(2), and failure to state a claim with respect to Ferring's inequitable conduct claim under Rule 12(b)(6), Ferring has filed an Amended Complaint pursuant to Rule 15(a)(1)(B), which includes additional facts that address the three grounds on which Defendants moved to dismiss. (*See generally*, D.I. 18.) Therefore, Defendants' motion to dismiss is moot. *Airport Inv'rs Ltd. P'ship v. Neatrour*, No. 03-831-GMS, 2004 WL 225060, at *1 (D. Del. Feb. 3, 2004) ("Because [plaintiff] subsequently filed an amended complaint as a matter of right, the court finds [defendant's] motion to dismiss the initial complaint moot.").

**1.     Subject Matter Jurisdiction**

Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction "because Ferring fails to identify any case or controversy that warrants immediate attention from the Court." (D.I. 12 at 1.) In response, Ferring amended its allegations to add additional facts that establish subject matter jurisdiction existed at the time the Complaint was filed. (*See, e.g.,* D.I. 18 at ¶¶ 85-109.) For example, Ferring's Amended Complaint addresses the several factors courts have assessed in determining whether subject matter jurisdiction is proper, including:  (i) the likelihood of approval of the accused product (*see, e.g., id.* at ¶¶ 85-98, 103-106); (ii) the history of litigation between the parties, particularly involving related products and patents (*see, e.g., id.* at ¶ 100); (iii) assertions of infringement by the patent holder (*see, e.g., id.* at ¶¶ 101-102); (iv) time between filing of the declaratory judgment action and the start of potentially infringing activities (*see, e.g., id.* at ¶¶ 105); and (v) whether the accused product is essentially "fixed" with respect to allegedly infringing attributes (*see, e.g., id.* at ¶¶ 106). *See, e.g., Danisco*

*U.S. Inc. v. Novozymes A/S,* 744 F.3d 1325, 1331 (Fed. Cir. 2014); *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.,* 599 F.3d 1377, 1379 (Fed. Cir. 2010); *Benitec Australia, Ltd., v. Nucleonic, Inc.,* 495 F.3d 1340, 1348-49 (Fed. Cir. 2007); *Idenix Pharms., Inc. v. Gilead Scis., Inc.,* No. 13-1987-LPS, 2014 WL 4222902, at *3 (D. Del. Aug. 25, 2014); *Shoulder Innovations, LLC v. Ascension Orthopedics, Inc.,* No. 11-810-JEI/AMD, 2012 WL 2092379, at *2-3 (D. Del. June, 8, 2012).

Ferring's Amended Complaint moots Defendants' motion to dismiss for lack of subject matter jurisdiction. *Airport Inv'rs*, 2004 WL 225060, at *1 (finding a Rule 12(b)(1) motion mooted by plaintiff's filing an amended complaint as a matter of right).

### 2.    Personal Jurisdiction

In a single paragraph in their brief, Defendants also moved to dismiss the Complaint with respect to Reprise for lack of personal jurisdiction. (D.I. 12 at 20.) As explained above, there is no evidence that Reprise currently has any ownership rights in the patents in suit, and thus whether it should remain in this action is unclear. Assuming, however, that Reprise is the owner of the patents in suit, Ferring has amended the jurisdictional allegations in its complaint to eliminate any doubt that this Court has personal jurisdictional over Reprise. (*See* D.I. 18 at ¶¶ 14-52.) Defendants' motion to dismiss is thus moot. *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 670 n. 1 (D. Del. 2014) (noting defendant's Rule 12(b)(2) motion to dismiss was mooted upon plaintiff's filing of an amended complaint).

### 3.    Sufficiency of Ferring's Inequitable Conduct Allegation.

Defendants also moved to dismiss Ferring's inequitable conduct count for failure to state a claim. (D.I. 12 at 18.) While Ferring believes it sufficiently pled facts alleging inequitable conduct by Dr. Fein in the Complaint, Ferring has added additional details in its Amended Complaint to support its claim. (*See* D.I. 18 at ¶¶ 138-148.) In its Amended Complaint, Ferring

identifies "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO," *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed. Cir. 2009), and provides "sufficient allegations of underlying facts from which a court may reasonably infer that [Dr. Fein] (1) knew of the withheld material information . . . and (2) withheld or misrepresented this information with a specific intent to deceive the PTO," *id.* at 1328-29. Ferring's Amended Complaint therefore moots Defendants' motion to dismiss. *Calloway v. Green Tree Servicing, LLC,* 599 F. Supp. 2d 543, 546 (D. Del. 2009) ("Defendant's motion to dismiss [under Rule 12(b)(6)] is responsive to plaintiffs' original complaint. As the amended complaint has superseded the original, defendant's motion to dismiss has become moot. Accordingly, the court dismisses defendant's motion.").

### C.   Transfer to SDNY Is Improper and Unwarranted

#### 1.   Legal Standard

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a) establishes a two-part transfer analysis. The court first determines whether the action could have been brought in the proposed transferee forum and then asks whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice. *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16-733-GMS, 2017 WL 1536394, at *1 (D. Del. Apr. 27, 2017). In *Jumara v. State Farm Insurance Company*, 55 F.3d 873 (3d Cir. 1995), the Third Circuit instructed courts to consider the various private and public interests protected by § 1404. These private interests may include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the

witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests may include:

the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). The burden rests with the defendant to show that transfer is appropriate at each step, *id.* at 879, and "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail," *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## 2. The Case Could Not Have Been Brought in SDNY

Defendants' motion to transfer should be denied because it fails the first part of the transfer analysis—namely, venue would not be proper in SDNY under a just application of the Supreme Court's holding in *TC Heartland LLC v. Kraft Food Group Brands LLC,* -- U.S. --, 137 S. Ct. 1514 (2017) to actions for declaratory judgment of non-infringement.

In patent infringement actions, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In *TC Heartland*, the Supreme Court unanimously held that, for purposes of establishing residency for venue in patent infringement actions, domestic corporations only reside in the State in which they are incorporated. *TC Heartland*, 137 S.Ct. at 1521. In so holding, the Supreme Court upended 27 years of Federal Circuit precedent wherein venue in patent infringement actions was proper in any district that had personal jurisdiction over the defendant corporation (*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990))—a rule that had essentially allowed patent

holders to bring infringement actions in any district where the defendant had made sales.

The Supreme Court did not address whether its significantly narrower test for venue in patent infringement actions should also apply in actions for declaratory judgment of non-infringement—the mirror image of a patent infringement action. Venue in such actions has traditionally been governed by the general venue statute 28 U.S.C. § 1391(c), *see VE Holding*, 917 F.2d at 1583, which, like the Federal Circuit's test prior to *TC Heartland,* synonymizes venue with personal jurisdiction over a defendant. However, from a policy perspective, if a patent owner can only bring an infringement suit in a district where the accused infringer is incorporated or where the accused infringer has committed acts of infringement and has a regular and established place of business, a declaratory judgment plaintiff (i.e., an accused infringer) should also only be able to bring suit in a district where the declaratory judgment plaintiff is incorporated or where the declaratory judgment plaintiff has allegedly committed acts of infringement and has a regular and established place of business.

Applying that rationale here, this action could not have been brought in SDNY as Ferring Pharma (a domestic corporation) is neither incorporated in New York nor does it have a regular and established place of business there. Given the evolving law surrounding proper venue in patent infringement actions, it would be imprudent to transfer this action to SDNY. Thus, Defendants' motion to transfer should be denied.[5]

### 3. The *Jumara* Factors Weigh Heavily Against Transfer to SDNY

Even if the Court finds this action could have been brought in SDNY, the Court should

---

[5] Defendants argue that the present action could have been brought in SDNY, as evidenced by the fact that Ferring sued Defendants in SDNY claiming ownership of the patents in suit. (D.I. 12 at 17.) However, the SDNY action did not involve allegations of patent infringement (or a declaratory judgment action for non-infringement) (*see* D.I. 13-1 at Ex. 3), and thus were not governed by § 1400(b).

deny Defendants' motion to transfer because, as described below, the *Jumara* private and public interest factors weigh in favor of keeping this action in Delaware.

### a.    The SDNY Action does not support transfer

In support of their motion to transfer, Defendants make passing reference to the *Jumara* factors, but Defendants' primary argument for transfer to SDNY is premised on the assertion that "Judge Sweet has developed extensive knowledge about the parties, the patents in suit, and the underlying technology." (D.I. 12 at 2.) This is simply wrong. For example, with respect to the patents in suit, Judge Sweet never reached the merits of any technical aspects of the claims or disclosure, instead basing his rulings on time bars and equitable estoppel. (*See, e.g.,* D.I. 13-1, Ex. 5.)[6] Moreover, Defendants' claim that "Judge Sweet has considered dozens of submissions from the parties including detailed technical declarations from the inventors and experts and issued numerous written opinions" (D.I. 12 at 6; *see also id*. at 12) is misleading. The claims of the patents in suit hinge on pharmacological limitations, such as peak blood plasma concentrations of desmopressin and distinct routes of administration (*see, e.g.,* D.I. 18 at ¶¶ 40, 44, 48),[7] which Judge Sweet never considered. Instead, Judge Sweet determined that equitable estoppel based on conduct stemming from correspondence between Ferring's in-house counsel and Dr. Fein's counsel (D.I. 13-1, Ex. 5 at 22)—not issues related to the specific pharmacology

---

[6] Judge Sweet based his rulings related to the Ferring patents at issue in the SDNY action on Allergan and Dr. Fein's admissions that Dr. Fein did not conceive of various elements of those claims—none of which relate to the pharmacological limitations in the claims of the patents in suit. (D.I. 13-1, Ex. 12.)

[7] The patents in suit are generally directed to (i) methods of administering a pharmaceutical composition comprising a dose of desmopressin, sufficient to achieve, *inter alia*, a maximum plasma/serum concentration no greater than 10 pg/mL, (ii) methods for inducing voiding postponement in a patient comprising delivering to the bloodstream of the patient an amount of desmopressin no more than about 1 or 2 ng/kg by intranasal, transdermal, intradermal, transmucosal or conjunctival administration to produce an antidiuretic effect lasting for no more than about 4 and 6 hours, and (iii) compositions that, when administered to a patient, purportedly establish a steady plasma/serum desmopressin concentration in the range from about 0.1 pg/mL plasma/serum to about a maximum of 10 pg/ mL plasma/serum. (D.I. 18 at ¶¶ 40, 44, 48.)

recited in the claims of the patents in suit—required dismissal of the patents in suit from the SDNY 35 U.S.C. § 256 action. Therefore, the patents in suit here are no longer in the case in SDNY. (*See* D.I. 13-1, Ex. 5 at 2.) The only remaining claims are 35 U.S.C. § 256 claims to add Dr. Fein as joint inventor on Ferring's patents, which suffer from a fatal lack of standing such that those claims could be dismissed prior to upcoming scheduled trial in October 2017.

Defendants also claim that "Judge Sweet attained a detailed understanding of the desmopressin drug and Dr. Fein's inventive work on developing low dose formulations of desmopressin to treat nocturia." (D.I. 12 at 12.) But Judge Sweet's opinions merely list admitted facts regarding the sequence and timing of various applications[8] and generalized concepts (*e.g.,* "low doses" of desmopressin, which Defendants fail to note Judge Sweet found was admittedly not invented by Dr. Fein (*see* D.I. 13-1, Ex. 12 at 11-20)), without reference to the pharmacology at issue, or the claims and examples in the patents in suit or their file histories. The importance of these documents cannot be overstated, as Dr. Fein himself argued adamantly during prosecution about the pharmacological limitations in the claims and the importance of at least Example 8 in the specification as evidence of his supposed "low dose" inventions. (*See* D.I. 18 at ¶ 145.) Judge Sweet never considered those arguments or any related documents—he never reached the merits—before dismissing the patents in suit due to equitable estoppel.

Simply put, and contrary to Defendants' characterization of the events in SDNY, there are no overlapping claims and the only remaining claims will either shortly be dismissed or subject to trial. Accordingly, an objective assessment of the SDNY action applied to the *Jumara* factors does not weigh in favor of transfer.

---

[8] Defendants' claim that "Judge Sweet has had the opportunity to study the patents in suit" (D.I. 12 at 12) relies on a recitation of admitted facts ***as to the dates of filing*** of various priority applications (*id.* (citing D.I. 13-1, Ex. 5 at 4-5 and Ex. 12 at 5-6) (emphasis added)).

b.      **Private interest factors**

*(1) Plaintiffs' choice of forum*

The first private interest factor to be considered is the "plaintiff's forum preference as manifested in the original choice." *Jumara*, 55 F.3d at 879. Courts accord substantial deference to this forum decision. *Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." (internal quotation marks omitted)). This factor is "[p]erhaps the most significant factor in the transfer analysis." *Guzzetti v. Citrix Online Holdings GmbH*, No. 12-01152-GMS, 2013 WL 124127, at *3 (D. Del. Jan. 3, 2013).

Ferring chose to litigate this dispute in Delaware, in part, because Ferring Pharma considers Delaware to be part of its "home turf" as it is incorporated under the laws of Delaware. *See AIP Acquisition LLC v. iBasis, Inc.*, No. 12-616-GMS, 2012 WL 5199118, at *3 (D. Del. Oct. 19, 2012) ("[T]he court has observed that a corporate entity's state of incorporation is part of its 'home turf.'"); *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 759 (D. Del. 2012) ("The Court agrees with those cases that include a corporate entity's state of incorporation as part of its 'home turf.'"). Therefore, Ferring's choice to litigate in Delaware, its state of incorporation, should be accorded heightened deference in the § 1404(a) analysis. *See AIP*, 2012 WL 5199118, at *3 (giving heightened weight to plaintiffs' choice of forum, which was its state of incorporation, and stating the factor "counsels against transfer").

Ferring also chose to litigate this action in Delaware because two of the three defendants—Allergan and Serenity—are also incorporated in Delaware. "[I]t is not appropriate to disregard plaintiff's choice of forum where it has a rational and legitimate reason for choosing the forum." *Textron Innovations, Inc. v. The Toro Co.*, No. 05-486-GMS, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005). The fact that two of the three defendants are incorporated in

Delaware is a rational and legitimate reason for doing so. *Boston Sci. Corp. v. Johnson & Johnson Inc.,* 532 F. Supp. 2d 648, 654 (D. Del. 2008) ("The deference afforded plaintiff's choice of forum will apply so long as plaintiff has selected the forum for some legitimate reason."); *Cellectis S.A. v. Precision Biosciences, Inc.,* 858 F. Supp. 2d 376, 381 (D. Del. 2012).

Defendants argue, without any legal support, that the Court should "flatly reject" any argument by Ferring that its choice of forum should be afforded deference, pointing generally to Ferring's April 2012 complaint in the SDNY action. (D.I. 12 at 17.) But, as described above, the connection between the SDNY action and this action is tenuous and should not negate the deference to be afforded to Ferring's choice of forum.

Thus, for the reasons discussed, and this factor weighs heavily against transfer.

### (2) Defendants' choice of forum

The second *Jumara* private interest factor is the defendant's forum preference. *Jumara,* 55 F.3d at 879. "Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference." *Intellectual Ventures*, 842 F. Supp. 2d at 755.

Here, Defendants have expressed a desire for this action to proceed in SDNY, claiming overlap with the SDNY action. But again, as explained above, the SDNY action and this action are different. In the SDNY action, the claims that involved the patents in suit here were directed to correcting inventorship under 35 U.S.C. § 256. There were no claims that the patents in suit were not infringed, invalid, or unenforceable. Moreover, the claims directed to correcting inventorship of the patents in suit were dismissed in August 2015 on summary judgment based on equitable estoppel, and the Court never reached the merits of the inventorship claims. (*See* D.I. 13-1, Ex. 5.) The only claims remaining in the SDNY action are the defendants' counterclaims directed to adding Dr. Fein as joint inventor on Ferring's patents that are separate and distinct from the patents in suit here. This factor does not favor transfer.

### (3) Where the claims arose

The third private interest factor is "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. Defendants do not argue this factor, and, in patent cases, this factor is generally neutral.

### (4) The convenience of the parties

The fourth *Jumara* private interest factor is the "convenience of the parties as indicated by their relative physical and financial condition." *See Jumara*, 55 F.3d at 879. In assessing this factor, courts have traditionally looked to several elements: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district) for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Fuisz Pharma LLC v. Theranos, Inc.*, No. 11-1061-SLR-CJB, 2012 WL 1820642, at *12 (D. Del. May 18, 2012), *recommendation accepted*, 2012 WL 2090622 (D. Del. June 7, 2012).

Defendants argue that SDNY is more convenient because Reprise has its principal place of business there, Serenity has an office there, and Serenity's CEO, Dr. Fein, and "other key witnesses" reside in New York City or the surrounding suburbs. (D.I. 12 at 8.) They also argue that "New York, with major international airports nearby -- would be far more convenient for Ferring witnesses traveling from the Netherlands and Sweden," and "under such circumstances transfer is strongly favored." (*Id.*)

Defendants' arguments overstate the relative inconveniences in litigating in this District rather than SDNY. First, the Wilmington courthouse is approximately an hour and forty-five minute train ride from Penn Station or an approximate two hour drive from Manhattan. (Severance Dec. at ¶¶ 8-9, Exs. F, G.) Second, while it is nice for Defendants to worry about the convenience of Ferring's witnesses traveling from Europe, the truth is that Ferring's witnesses can just as easily fly to the Philadelphia International Airport and take a thirty minute car ride to

the Wilmington courthouse as they can fly to Newark or JFK airports and navigate their way to the Manhattan courthouse. (*See, e.g., id.* at ¶ 10, Ex. H.) The differences in physical proximity of either courthouse to the parties' places of business and location of witnesses is insignificant.

Further, Defendants' argument that Delaware is inconvenient should be accorded little weight where both Allergan and Serenity have chosen to incorporate in Delaware. *Rothschild Mobile Imaging Innovations, LLC v Mitek Systems, Inc.*, No. 14-617-GMS, 2015 WL 4624164, at *5 (D. Del. July 31, 2015) ("The decision to incorporate in Delaware suggests that the inconvenience of litigating here is somewhat less than the court would ordinarily presume it to be in this case."); *Intellectual Ventures*, 842 F. Supp. 2d at 756 (finding Third Circuit precedent "make[s] plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense, 'inconvenient' to defend its actions in the forum in which the corporation has freely chosen to create itself"). This factor is neutral.

### (5) *The convenience of the witnesses to the extent the witnesses may be unavailable for trial in one of the fora*

The next *Jumara* factor is "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Importantly, "witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial." *Nilssen v. Everbrite, Inc.,* No. 00-189-JJF, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001). Moreover, the court has recognized that this factor should be given weight only "when there is some reason to believe that a witness actually will refuse to testify absent a subpoena." *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732 (D. Del. 2012). Here, Defendants have not identified a single third party witness who will refuse to testify absent a subpoena. This factor is neutral.

> *(6) The location of books and records and to the extent that*
> *they may not be available in one of the fora*

The final private interest factor is "the location of books and records (similarly limited to the extent that the files could not be produced in an alternative forum)." *Jumara*, 55 F.3d at 879. Some of the evidence obtained in the course of discovery in the SDNY action may be relevant to the disputes here, but that evidence has already been obtained and will be available for use by the parties in this case, regardless of transfer. Moreover, Defendants have failed to show their documents cannot easily be produced electronically in Delaware. Thus, this factor is neutral.

### c.   Public interest factors

> *(1) Practical considerations that could make the trial fast,*
> *expeditious, or inexpensive*

*Jumara* instructs the court to weigh "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. "Because the practical considerations factor is a 'public interest' factor, 'at least some attention' must be paid to the public costs of litigation. *Blackbird*, 2017 WL 1536394, at *6 (citation omitted). Defendants do not address the public costs of litigation. Instead, they again focus on the SDNY action (D.I. 12 at 6-7); but, as already discussed, Defendants overstate the relatedness of the SDNY action to this action. Further, the *Abbott* case relied on by Defendants is distinguishable from the facts here. (*See id.* at 7 (citing *Abbott Labs. v. Roxane Labs., Inc.*, No. 12-457-RGA-CJB, 2013 WL 2322770, at *23 (D. Del. May 28, 2013)).) In *Abbott*, the first-filed Ohio action and the Delaware action both arose of out the defendant's filing of an ANDA, the cases involved overlapping patents and issues of infringement and validity, and there were repeated admissions by both parties that the actions involved common questions of law and fact. *Abbott*, 2013 WL 2322770, at *1-2, 24. Here, the SDNY action and this action currently involve different patents, non-identical parties, and different causes of action. This factor does not favor transfer.

*(2) Relative administrative difficulty in the two fora*
*resulting from court congestion*

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion," *Jumara*, 55 F. 3d at 879, and, in particular, its effect on time to trial, *Blackbird*, 2017 WL 1536394, at \*6 (considering time to trial statistics). "While the relative size of the districts' respective caseloads is typically not a sufficient justification for transfer alone, "increased times from filing to disposition and trial are important factors that do influence the court's calculus." *Id.* (citation omitted).

Defendants argue that this factor supports transfer because "[a]t present there are more than 700 patent cases pending in the District of Delaware, and the burden of that caseload is particularly acute given Senior Judge Robinson's imminent retirement and the uncertainty surrounding the timing of the filling of her vacancy." (D.I. 12 at 7.) While this District is undoubtedly dealing with a heavy caseload, Ferring notes the District of Delaware has invited four judges from outside the District to handle cases in light of the judicial vacancies. (Severance Dec. at ¶ 12, Ex. I.) Second, the relative time to trial and overall disposition times in this District versus SDNY do not warrant transfer. Specifically, during the 12-month period ending on December 30, 2016, the median time from filing to trial for civil cases in SDNY was higher than this District—28.3 months in SDNY versus 24.5 months in this District. (*Id.* at ¶ 12, Ex. J.) Further, the median time from filing to disposition in SDNY versus this District were similar—9.1 months versus 9.2 months. (*Id.* at ¶ 12, Ex. J.) This factor does not favor transfer.

*(3) The local interest in deciding local controversies at*
*home*

The next factor is "the local interest in deciding local controversies at home." *Jumara*, 55 F.3d at 879. "[P]atent issues do not give rise to a local controversy or implicate local interests." *Smart Audio*, 910 F. Supp. 2d at 733. Therefore, this factor is neutral.

*(4) The public policies of the fora*

The last public interest factor is the "public policies of the fora." *Jumara*, 55 F.3d at 879. "[T]he public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for the resolution of business disputes." *AIP,* 2012 WL 5199118, at *5. This factor is the least important venue transfer factor, but it should not be ignored. *See id.*, at *5 ("While this factor is of minimal importance, it does weigh against transfer, as both [plaintiff] and [defendant] are companies organized under Delaware law."). Here, Plaintiffs Ferring Pharma and Defendants Allergan and Serenity are all organized under the laws of Delaware. Thus, Delaware's public policy encourages resolution of this dispute in Delaware, and this factor weighs against transfer.

## V.    CONCLUSION

For the foregoing reasons, Ferring respectfully requests the Court grant jurisdictional discovery to determine who owns the patents in suit and therefore who is a proper defendant in this action. In light of Ferring's filing of Amended Complaint pursuant to Rule 15(a)(1)(B), Ferring further requests the Court deny Defendants' motion to dismiss as moot. With respect to the transfer analysis under § 1404(a), this case could not have been brought in SDNY upon application of the Supreme Court's *TC Heartland* ruling to declaratory judgment actions for non-infringement. Further, considering the *Jumara* factors as a whole, Defendants have not met their burden of demonstrating that the interests of justice and convenience strongly favor transfer. Therefore, Ferring requests the Court deny Defendants' alternative motion transfer to SDNY.

Dated: June 30, 2017

Of Counsel:

Keats A. Quinalty
John W. Cox
Joshua A. Davis
Womble Carlyle Sandridge & Rice, LLP
271 17th Street NW, Suite 2400
Atlanta, GA 30363
Telephone: (404) 872-7000
KQuinalty@wcsr.com
JWCox@wcsr.com
JoDavis@wcsr.com

Respectfully submitted,

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
Dana K. Severance (#4869)
Daniel Attaway (#5130)
Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4383
MBourke@wcsr.com
DSeverance@wcsr.com
DAttaway@wcsr.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2017, I electronically filed a true and correct copy of the foregoing **FERRING'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS SERENITY AND REPRISE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER** via CM/ECF and electronically mailed a copy to the below individuals:

Jack B. Blumenfeld
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1202 North Market Street
P.O. Box 1347
Wilmington, DE 19899
jblumenfeld@mnat.com

Christopher J. Harnett
James Sottile IV
Shehla Wynne
JONES DAY
250 Vesey Street
New York, NY 10281
charnett@jonesday.com
jsottile@jonesday.com
swynne@jonesday.com

Dated: June 30, 2017

*/s/ Mary W. Bourke*
Mary W. Bourke (#2356)
mbourke@wcsr.com

-22-