UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/1/2019

Ferring Pharmaceuticals Inc. et al.,

                Plaintiffs,

-against-

Serenity Pharmaceuticals, LLC et al.,

                Defendants.

1:17-cv-09922 (CM) (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiffs Ferring Pharmaceuticals Inc., Ferring B.V. and Ferring International Center S.A. (collectively, "Ferring") move to compel Defendants/Counterclaim-Plaintiffs Serenity Pharmaceuticals, LLC ("Serenity") and Reprise Biopharmaceutics, LLC ("Reprise") (collectively, "Counterclaimants") to supplement their damages-related document production. (Ferring Letter Motion, ECF No. 557.)[1] For the following reasons, Ferring's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This is an action for declaratory judgment by Ferring against two entities formed by Dr. Seymour Fein — Serenity and Reprise — seeking a declaration that certain of Dr. Fein's patents are invalid and unenforceable, and that they are not infringed by Ferring's product NOCDURNA,

---

[1] In deciding this motion, the Court has considered Ferring's Letter Motion, Counterclaimants' letter response (Letter Response, ECF No. 559); Ferring's reply letter (Ferring Letter Reply, ECF No. 560); Ferring's discovery requests at issue (Ferring First Req., ECF No. 562-1; Ferring Second Req., ECF No. 562-2; Ferring Fourth Req., ECF No. 562-3); Counterclaimants' supplemental letter (Counterclaimants' 10/25/19 Ltr., ECF No. 566) and Ferring's supplemental letter. (Ferring 10/29/19 Ltr., ECF No. 567.)

which is a product for the treatment of Nocturia. Counterclaimants have asserted counterclaims against Ferring for patent infringement.[2]

This case was commenced with the filing of a Complaint on April 28, 2017. (Compl., ECF No. 1.) The Complaint later was amended, and Counterclaimants filed their answer and counterclaims on June 28, 2018. (Answer, ECF No. 101.) The damages sought by Counterclaimants include royalties on the patents, as well as lost profits. (*See* Ferring Letter Motion at 3.) Counterclaimants also seek a permanent injunction against Ferring. (*See id*.) On February 6, 2019, Avadel filed a petition in the United States Bankruptcy Court for the District of Delaware seeking relief under chapter 11 of the United States Bankruptcy Code. (*See In Re: Avadel Specialty Pharmaceuticals, LLC*, Case No. 19-10248-CSS (D. Del.).)

Ferring now asserts that "information from Avadel's bankruptcy shows that Counterclaimants' damages-related discovery is incomplete and/or incorrect and needs to be supplemented pursuant to Federal Rule of Civil Procedure 26(e)." (Ferring Letter Motion at 1.)[3]

---

[2] Reprise asserts that it is the owner of the two patents that allegedly are infringed; Serenity asserts that it is the exclusive licensee of such patents; and Avadel Specialty Pharmaceuticals ("Avadel"), an additional Counterclaimant, asserts that it is the exclusive sublicensee of such patents.

[3] As an example, Ferring states:

> [A] central theory of Counterclaimants' damages expert, Dr. Christopher Vellturo, is that a license agreement between Serenity and Avadel (the ELAA) serves as an appropriate touchstone for determining a reasonable royalty for the patents in suit. Putting aside other deficiencies in this analysis, Avadel's bankruptcy counsel confirmed the terms of the ELAA are not commercially reasonable, explaining to the Bankruptcy Court that "[t]he ELAA has very onerous terms, economic terms in there for the debtor [Avadel] and, in fact, arguably, it's the entire reason why we're in Chapter 11 today." *In re Avadel Specialty Pharm., LLC*, Case No. 19-10248-CSS (Bankr. D. Del.), D.I. 140 at 27:6-11. Notably, this statement came just months after Dr. Vellturo's expert report, and additional statements from Avadel's bankruptcy counsel and Avadel's executives indicate that Avadel had already began exploring ways to get out of its obligations under the ELAA **before** Dr. Vellturo submitted his expert report.

(Ferring Letter Reply at 1-2 (emphasis in original).)

In its Letter Motion, Ferring seeks eleven categories of documents for which it seeks supplementation. (Ferring Letter Motion at 2.)

In response, Counterclaimants assert that "Ferring's requests for eleven new categories of documents . . . are untimely, irrelevant, and no longer ripe in view of events that have transpired over the last six months." (Letter Response at 1.) Further, Counterclaimants state that they "do not have any responsive, non-privileged documents in their possession, custody, or control that fall into categories 1-6."[4] (*Id*. at 2.)

In reply, Ferring states that it is not seeking to reopen discovery and that the duty to supplement continues after the close of fact discovery. (Ferring Letter Reply at 1.) Ferring also asserts that the categories of documents it seeks are relevant to issues in the case. (*See id*. at 2-3.)

Oral argument was held by telephone on October 21, 2019. (10/21/19 Tr.) Following oral argument, I directed the parties to make supplemental submissions. (10/21/19 Order, ECF No. 563.) Counterclaimants made their supplemental submission on October 25, 2019. (Counterclaimants' 10/25/19 Ltr.) Ferring made its supplemental submission on October 29, 2019. (Ferring 10/29/19 Ltr.)

---

[4] During oral argument, Counterclaimants stated that they had been narrowly construing Categories 5 and 6 as asking only for "documents related to Avadel's efforts to find parties to assume some of its rights and obligations." (10/21/19 Tr., ECF No. 564, at 5.) If those requests are construed to include materials related to efforts by Serenity and/or Reprise, then Counterclaimants concede that they have responsive documents in their possession, custody or control.

**DISCUSSION**

I.  **Legal Standards**

Rule 26(e) of the Federal Rules of Civil Procedure provides:

> (e) Supplementing Disclosures and Responses.
>
> (1) In General. A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.
>
> (2) Expert Witness. For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.[5]

Fed. R. Civ. P. 26(e).

"The duty to supplement continues even after the discovery period has closed." *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 358 (W.D.N.Y. 2011) (citations omitted). As stated by Magistrate Judge Dolinger in a case where the producing party had argued that it had no duty to supplement after the close of discovery:

> The rule, on its face, makes no distinction between information-including documents-acquired prior to and after the conclusion of fact discovery (or indeed of any discovery). Moreover, such a distinction could pose a serious risk of unfairness to the discovering party, since documents created or acquired after discovery but before trial might entirely undercut the gist of earlier discovery responses, thus placing the discovering party at a severe and entirely unfair disadvantage. . . . Not surprisingly, the Advisory Committee Notes contemplate an approach contrary to that espoused by defendants.

---

[5] Pretrial disclosures under Rule 26(a)(3) are due within 30 days of trial. *See* Fed. R. Civ. P. 26(a)(3)(B).

4

> Thus, the Committee notes that "[s]upplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26(e), 1993 Advisory Committee Notes, in Federal Civil Judicial Procedure and Rules at 151 (West 2000).

*Pizza Pub. Co. v. Tricon Glob. Restaurants, Inc.*, No. 99-CV-12056 (BSJ) (MHD), 2000 WL 1457010, at *1-2 (S.D.N.Y. Sept. 29, 2000). Determining the existence of a duty to supplement under Rule 26(e) is committed to the "sound discretion" of the Court. *See Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir. 1979).

II. **Application**

   A. **Categories 1-4, 7 and 11**

Categories 1 to 4 relate to Avadel, and Ferring has an agreement with Avadel that it will not pursue document production from Avadel. (*See* Ferring Letter Motion at 3.) Thus, Ferring only can seek these documents to the extent that they are in the possession, custody or control of Serenity and/or Reprise. (*See id*.) Counterclaimants represented in writing (Letter Response at 2-3) and during oral argument (10/21/19 Tr. at 4) that Serenity and Reprise do not have documents responsive to Categories 1 to 4 in their possession, custody or control. Thus, to the extent that Ferring seeks to compel production of documents in these categories, its motion is denied as moot.

Category 7 requests documents "related to the contention of CPEX Pharmaceuticals, Inc. (CPEX), that Serenity cannot extend a valid sublicense to CPEX technology." (Ferring Letter Motion at 2.) This contention by CPEX, which was "made known to Ferring for the first time in connection with Avadel's bankruptcy" (Ferring Letter Reply at 2), suggests that Serenity never had the ability to partner with other companies to satisfy patient demand. Category 7 directly

5

relates to Ferring's Document Request No. 48, which seeks: "All Documents and Things concerning or regarding Serenity and Reprise's statement that 'Avadel and Serenity have the capacity to fully satisfy the demand for patients seeking treatment for nocturia with their NOCTIVA product' . . .." (Ferring Second Req. No. 48, at 10.) Thus, the Court in its discretion hereby orders, pursuant to Fed. R. Civ. P. 26(e)(1)(A) and 26(e)(1)(B), that Counterclaimants supplement their document production in response to Document Request No. 48 by producing documents responsive to Category 7.

Category 11 seeks documents "related to Avadel's allegation that Serenity breached contractual obligations owed to Avadel, communicated to Serenity on January 27, 2019." (Ferring Letter Motion at 2.) Since Ferring has agreed not to obtain document production from Avadel, and it is Avadel that made the allegation referenced in Category 11, the Court declines to order any production responsive to this category.

B. **Categories 5-6 and 8-10**

The Court addresses these categories together since Counterclaimants addressed them together in their October 25 letter, which contains arguments as to why they ought not be compelled to supplement their document productions.[6] (Counterclaimants' 10/25/19 Ltr. at 1.) Category 5 seeks "[m]aterials related to efforts to find parties to assume some or all of Avadel's rights and/or obligations related to Noctiva." (Ferring Letter Motion at 2.) Category 6 seeks "[m]aterials related to attempts to find a new manufacturer or to negotiate new terms for the

---

[6] Counterclaimants also include Category 11 in their analysis of the other categories, but the Court already has addressed Category 11 above.

manufacture of Noctiva after Avadel rejected the Renaissance Agreements." (*Id*.)[7] Category 8 seeks communications between Serenity and/or Reprise and Roivant Sciences GmbH ("Roivant")[8] relating to Noctiva. (*Id*.) Category 9 seeks "materials related to any negotiations between Avadel, Serenity, Reprise, and/or Roivant concerning Noctiva." (*Id*.) Category 10 seeks documents "related to Serenity's allegation that Avadel failed to use commercially reasonable efforts to commercialize Noctiva . . . ." (*Id*.)

In arguing for supplementation of Counterclaimants' document production, Ferring points to, among other things, Ferring's document requests regarding opinions of Counterclaimants' damages expert, Dr. Vellturo, as well as the opinions themselves. (*See* Ferring Second Req. Nos. 40 and 41; 10/21/19 Tr. at 6-7, 20-21; Ferring Letter Reply at 1-2.) Ferring's Request for Production No. 40 seeks "[a]ll Documents and Things concerning or regarding the alleged 'irreparable harm' to Serenity and Reprise referred to in paragraphs 4 and paragraphs 7 through 20 of the Vellturo Declaration." (Ferring Second Req. at 9.) Request for Production No. 41 seeks "[a]ll Documents and Things concerning or regarding the 'relevant market dynamics' referred to in paragraph 7 of the Vellturo Declaration." (*Id*.) Further, Dr. Vellturo opines that the license agreement (the ELAA) between Serenity and Avadel serves as an appropriate touchstone for determining a reasonable royalty for the patents in suit. (*See* footnote 3, *supra*.)

Counterclaimants admit that Request for Production Nos. 40 and 41 "relate directly to the claim for a permanent injunction." (10/21/19 Tr. at 7.) In order to avoid supplemental

---

[7] A fair reading of Categories 5 and 6 is that they are seeking materials related to efforts by Serenity and/or Reprise, and are not limited to efforts by Avadel alone. *See* footnote 4, *supra*.

[8] Roivant is the company that bought Avadel's regulatory rights to sell Noctiva in the Avadel bankruptcy. (10/21/19 Tr. at 21.)

7

production in response to Categories 5 to 6 and 8 to 10, Counterclaimants offer to dismiss their permanent injunction claim without prejudice within five days of this Order. (Counterclaimants' 10/25/19 Ltr. at 1.) They argue that "[t]his dismissal will moot a portion of Ferring's arguments" related to the foregoing categories. (*Id*.) However, if Counterclaimants secure a new commercial partner before the end of 2019, they "reserve their right to seek injunctive relief." (*Id*.)

Counterclaimants also offer to "supplement" Dr. Vellturo's report "specifying that his lost profits analysis only applies through December 3, 2018 (if at all) and that his lost profits analysis (if presented at trial) will not include calculations based on sales forecasts." (Counterclaimants' 10/25/19 Ltr. at 1.) They note that their "stipulation is directed only to lost profits and not to a reasonable royalty, and is without prejudice." (*Id*.) They argue that "[t]his supplementation will moot a portion of Ferring's arguments" related to Categories 5 to 6 and 8 to 10. (*Id*.) Once again, if Counterclaimants secure a new commercial partner before the end of 2019, they "reserve the right to pursue a lost profits analysis beyond December 3, 2018." (*Id*. at 1-2.)

The Court finds that Counterclaimants' offers are not sufficient to avoid their duty to supplement. As Counterclaimants themselves admit, their offers only "moot a portion of Ferring's arguments" regarding the subject categories. (Counterclaimants' 10/25/19 Ltr. at 1.) In addition, by reserving their right to seek injunctive relief and pursue a lost profits analysis until the end of the year, Counterclaimants are leaving open the possibility that, even under their view of the case, additional discovery would be needed if Counterclaimants later sought to exercise such rights. In addition, and in any event, the Court finds that the supplemental documents sought by Ferring relate to the determination of a reasonable royalty.

Counterclaimants argue that "no supplemental discovery (sought after the close of discovery) related to a reasonable royalty analysis should be permitted that seeks documents created after the date of the hypothetical negotiation (which both parties agree is early November 2018)." (Counterclaimants' 10/25/19 Ltr. at 2.) Ferring does not take issue with the Counterclaimants' description of the law regarding the hypothetical negotiation:

> "The hypothetical negotiation attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). The fundamental reason for employing the hypothetical negotiation construct for a reasonable royalty is returning to the date when the infringement began. *See Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1158 (6th Cir. 1978) (Markey, J., sitting by designation) ("The key element in setting a reasonable royalty after determination of validity and infringement is the necessity for return to the date when the infringement began.").

(Counterclaimants' 10/25/19 Ltr. at 2.) Counterclaimants acknowledge that post-infringement evidence is probative in certain circumstances, but argue that those circumstances are not present in this case. (*Id*. at 3-5.) The Court, however, agrees with Ferring that Counterclaimants are conflating what evidence is admissible with what evidence is discoverable. (Ferring 10/29/19 Ltr. at 2-3.)

The Court is aware from its own experience that documents created after an event often are germane to that which came before. For example, in the present case, on January 21, 2019, Serenity alleged that Avadel materially breached its contractual obligations by failing to use commercially reasonable efforts to commercialize Noctiva, but one month earlier, on December 20, 2019, Counterclaimants submitted their damages expert report, in which Dr. Vellturo alleged, among other things, that Avadel had used commercially reasonable efforts to commercialize Noctiva (and the hypothetical negotiation itself is assumed to have occurred only a month before

that, in November 2018). (Ferring 10/29/19 Ltr. at 4.) Surely, Ferring is entitled in discovery to production of documents regarding what, if anything, occurred between November and January with respect to Avadel's efforts to commercialize Noctiva.

Thus, the Court in its discretion hereby orders, pursuant to Fed. R. Civ. P. 26(e)(1)(B) and 26(e)(2), that Counterclaimants supplement their document production by producing documents responsive to Categories 5 to 6 and 8 to 10.[9]

## CONCLUSION

For the foregoing reasons, Ferring's Letter Motion (ECF No. 557) is GRANTED IN PART and DENIED in part. Within 30 days of the date of this Order, Counterclaimants shall produce documents responsive to Categories 5 through 10.

**SO ORDERED**.

Dated: New York, New York
November 1, 2019

_____
**STEWART D. AARON**
**United States Magistrate Judge**

---

[9] During oral argument, the Court *sua sponte* raised the issue of whether Reprise had a duty to supplement since Request for Production No. 11 only sought "communications between Serenity and any Third Party concerning any patent in suit" (Request for Production No. 11, ECF No. 562-1, at 9), and there is no similar request seeking communications between Reprise and third parties relating to Noctiva. This issue had not previously been raised by Counterclaimants as a reason for Reprise not supplementing its document production. (Ferring 10/29/19 Ltr. at 4.) In the circumstances, given the overlapping interests between Reprise and Serenity—and taking into account that other requests for production cover Reprise, as well as Serenity—the Court's Order requires both Serenity and Reprise to supplement their document productions as set forth above.